UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CASE NO. 4:06 -CV-116

**DEBRA M. SEYMOUR**                                                                              **PLAINTIFF**

**V.**

**UNITED STATES OF AMERICA**                                                    **DEFENDANT/
                                                                                                      THIRD-PARTY PLAINTIFF**

**V.**

**THOMAS EARLY and
MARGARET TAYLOR**                                                               **THIRD-PARTY DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

These matters are before the Court upon two motions for partial summary judgment by the Defendant/Third-Plaintiff United States against Defendant Third-Party Defendant Taylor (DN 22) and Defendant Thomas Early (DN 23) and a cross-motion for summary judgment by Third-Party Defendant Margaret Taylor against the United States (DN 26). Fully briefed, these matters are ripe for consideration. For the following reasons, the United States' motion for partial summary judgment against Third-Party Defendant Taylor is **GRANTED;** Taylor's motion for summary judgment against the United States is **DENIED**; and the United States' motion for partial summary judgment against Third-Party Defendant Thomas Early is **GRANTED**.

### I. FACTS

The Summit is a golf and country club located in Daviess County, Kentucky. It consists of a golf course, pro shop, restaurant and banquet facility, swimming pool, and tennis courts. The Summit was owned by Miles Farms, LLC and, prior to the time in question, Miles Farms leased the restaurant and banquet facility to a third-party who did business as "Charlie's at the Summit." In

2002, Plaintiff, Debra Seymour, Secretary/Treasurer of Miles Farms, terminated Charlie's lease for poor performance.

In late 2002, a company called MW Development Services, LLC, attempted to purchase The Summit from Miles Farms. Richard Taylor was the manager of MW Development. Third-Party Defendant Margaret Taylor is Richard Taylor's wife. The Taylors intended to acquire The Summit through MW Development, along with several other properties, as part of an effort to create a "golf trail" across Kentucky and Tennessee. Both buyer and seller anticipated a quick sale that would close within 120 days, either in February or March 2002.

Because Miles Farms had terminated the prior lessee, the restaurant and banquet facility at The Summit was set to close at roughly the same time the purchase transaction was commencing. Both Miles Farms and Richard Taylor agreed that they should try to keep the restaurant open because otherwise The Summit's value would be negatively impacted and MW Development's ability to obtain financing would be jeopardized. Accordingly, on or about January 13, 2003, the attorney for MW Development formed a company called The Summit Food & Beverage LLC ("Food & Beverage"). Margaret Taylor was Food & Beverage's sole member and owner.

On January 16, 2003, Food & Beverage agreed to lease the restaurant, kitchen, and ballroom at The Summit from Miles Farms; to operate the restaurant and cater special events, and to provide concessions and drinks on the golf course. Margaret Taylor signed the lease as manager of Food & Beverage. On January 28, 2003, Food & Beverage applied to the Kentucky Department of Alcoholic Beverage Control for a basic license to serve alcohol at the restaurant. The application required Food & Beverage to attach a copy of its lease, which Margaret Taylor did. Margaret Taylor signed the application as Food & Beverage's sole member and 100% owner, and represented that

all of the information in the application and attached lease was true. In February 2003, the Kentucky Department of Alcoholic Beverage Control issued a license to Food & Beverage to sell alcohol at the restaurant at The Summit.

The evidence clearly indicates that the restaurant at The Summit was operated by and through an entity known as The Summit Food and Beverage, LLC., which is owned by Margaret Taylor, from roughly January 2003 through February or March 2004. Third-Party Defendant Thomas Early was the bookkeeper for Food & Beverage. As such, he handled all aspects of the company's finances. He had exclusive access to the company's checkbook; was the sole authorized check-signer; and signed every check the company ever issued. He was also responsible for withholding taxes from employee wages; filing quarterly returns to report the company's tax liabilities; and paying the company's taxes. Early, however, failed to perform these duties and during the second, third, and fourth quarters of 2003, and the first quarter of 2004, Food & Beverage failed to pay the United States Treasury the federal income and social security taxes the company was required to withhold from wages paid to its employees and its share of employment taxes.

Ultimately, MW Development could not obtain financing and its plans to buy The Summit fell through. In February 2004, Miles Farms terminated Food & Beverage's lease and subsequently installed a new company to run the restaurant at The Summit.

A delegate of the Secretary of the Treasury has determined that Margaret Taylor, as the sole member of Food & Beverage, owes the United States $104,969.23 in unpaid taxes, penalties, and interest. The United States also assessed against Early a trust fund recovery penalty, equal to Food & Beverage's unpaid taxes, in the amount of $41,460.51. The United States seeks summary judgment against Margaret Taylor and Thomas Early for these sums.

Margaret Taylor denies liability for any unpaid taxes due to the operation of the restaurant claiming that she never operated, or authorized the operation of the restaurant at The Summit. Mr. Early denies he is a responsible party.

## II. LEGAL STANDARD

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying the portion of the record which demonstrates the absence of a genuine issue of material facts. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party themselves thereafter must produce specific facts demonstrating that a genuine issue of fact exists for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986). The Rule requires the non-moving party to present "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of scintilla of evidence in support of the [non-moving party's] position will be insufficient, there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477. U.S. at 252.

## III. ANALYSIS

**A. Third-Party Defendant Margaret Taylor**

As noted above, Third-Party Defendant Margaret Taylor was the sole owner and only member of The Summit Food & Beverage, LLC. The Internal Revenue Code requires employers to withhold from employee compensation, and remit to the government, employee income taxes and the employee's own mandated FICA contributions. 26 U.S.C. §§ 3101, 3102(b). Section 7501(a) provides that the withheld money be held in trust for the United States until paid to the Treasury on a quarterly basis. 26 U.S.C. § 7501(a); Bell v. United States, 355 F.3d 387, 392 (6th Cir. 2004). "The withholding taxes 'are part of the wages of the employee, held by the employer in trust for the government;' the employer, as a function of administrative convenience, extracts money from a worker's paycheck and briefly holds that money before forwarding it to the IRS." Id. (quoting Gephardt v. United States, 818 F.2d 469, 472 (6th Cir. 1987)). If a sole-owner, single-member limited liability company ("LLC") does not elect to be treated as a corporation, the owner is personally liable for the employment taxes due and owing from the LLC. 26 U.S.C. § 61(a)(2); 26 C.F.R. § 301.7701-3(b); Littriello v. United States, 484 F.3d 372 (6th Cir. 2007); McNamee v. Dept' of the Treasury, 488 F.3d 100 (2d Cir. 2007).[1]

Taylor argues that she should not be held personally liable for Food & Beverage's tax debt because a tax return was never filed on behalf of Food & Beverage and, thus, never indicated how the LLC should be taxed. However, under the relevant Treasury Regulations, single-member LLC's

---

[1] Under federal tax laws, a corporation is subject to "double taxation" in that the corporation is taxed directly and its individual shareholders are further taxed on the dividends paid to them out of the corporation's income. 26 U.S.C. § 11(a); 61(a)(7). In contrast, an unincorporated sole proprietorship that is treated as such is taxed only once: the owner simply lists his business income on his individual tax return and the proprietorship, as a "disregarded entity," is not directly taxed. 26 U.S.C. § 61(a)(2); 26 C.F.R. § 301.7701-3(b). The Treasury Regulations provide that entities with only one owner may decide whether to be treated as a corporation or as a sole proprietorship. 26 C.F.R. §§ 301.7701-2(b); 301.7701-2(a); 301.7701(3). Under these Regulations, if an entity with one owner, including a single-member limited liability company ("LLC"), seeks to be treated as a corporation, it must check the appropriate box on its IRS Form 8832; if it does not check this box, the entity is treated and taxed as a sole proprietorship. 26 C.F.R. §§ 301.7701-3(b) and (c); Littriello, 484 F.3d 372.

5

are treated as sole proprietorships by default and are only taxed as corporations if the single-member so elects. If Taylor had wanted her LLC to be treated as corporation for tax purposes, then she was required to so indicate on an IRS Form 8832. Whether Taylor filed a tax return on behalf of her LLC is completely immaterial to the issue before the Court.

Taylor's primary argument is that she never operated or authorized anyone to operate a restaurant at The Summit under her corporate entity, Food and Beverage. She claims that she does not know Thomas Early, the bookkeeper. She testified that she did not even know that there was a bank account in the name of Food and Beverage until she was told so by an IRS agent. She claims that there was a "gentlemen's agreement" that Food and Beverage would obtain a liquor license so that Debra Seymour could continue to operate the restaurant at the The Summit. Both Margaret Taylor and her husband testified they never ran the restaurant, never hired anybody, and never fired anybody. The Taylor's claim their involvement was limited to obtaining the liquor license, as an accommodation to Debra Seymour.

The United States has shown that there is no question that the restaurant at The Summit was operated by the legal entity known as The Summit Food and Beverage, LLC. Margaret Taylor is the owner and sole member of Food and Beverage. Furthermore, the record shows that the Third-Party Defendant Thomas Early opened a bank account using the tax identification number of Food and Beverage and that he acted as a bookkeeper for the Food & Beverage restaurant operation at the Summit from 2003 to 2004. The record also shows that Food and Beverage leased the premises to operate a restaurant at The Summit from February 1, 2003, until January 31, 2004, and that Margaret Taylor obtained a license in Food & Beverage's name to sell alcohol there. Finally, it is undisputed that Margaret Taylor made no timely election to be taxed as a corporation. Therefore,

the United States is entitled to judgment against Margaret Taylor as a matter of law.

Margaret Taylor has raised certain questions related to whether the operation of the restaurant was authorized by her. To the extent that there are facts in dispute, the Court finds that they are not material to the United States' claim against Taylor.[2] Margaret Taylor's involvement, by incorporating a business, entering into a lease agreement and obtaining a liquor license, is sufficient to saddle her with the primary responsibility for the payment of these taxes. Whether the operation of the restaurant under the legal identity of Food and Beverage was within the understanding of the "gentlemen's agreement" she and her husband had with Debra Seymour is a matter to be resolved between those parties.

## B. Third-Party Defendant Thomas Early

The United States argues that it is entitled to recover a "trust fund" recovery penalty against Early under 26 U.S.C. § 6672(a) because he was responsible for collecting, truthfully accounting for, and paying over the taxes Food & Beverage was required to withhold from its employees' wages. In a letter written in response to United States' motion for judgment against him, Early states that he does not believe he should have to pay the amount due because he was not the owner of Food & Beverage and because he was not given any funds to the pay the company's employment taxes.

26 U.S.C. § 6672(a) states as follows:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not

---

[2]Taylor also claims that even if the Court were to find against her, she should not be held liable for the First Quarter 2004 tax debt of Food & Beverage because Food & Beverage "was not legally in existence" at that time. However, the evidence indicates that Food & Beverage was not administratively dissolved by Kentucky's Secretary of State until November 9, 2004. (DN 31, Attach. 3, Certificate of Dissolution).

accounted for and paid over.

The Sixth Circuit has held that an individual is liable under § 6672(a) if he or she: 1) is responsible for paying the taxes; and 2) willfully fails to turn over the tax money to the government. Bell, 355 F.3d at 392.

Thus, the Court must first consider whether Early was a responsible party. The Sixth Circuit has held that the determination of responsibility focuses on "the degree of influence and control which the person exercised over the financial affairs of the corporation and, specifically, disbursements of funds and the priority of payment to creditors." Id. at 393 (quoting Gephardt v. United States, 818 F.2d 469, 473 (6th Cir. 1987)). One important factor in this analysis is whether the individual had the ability to sign checks for the company. Id.

In his deposition, Early admitted that, as Food & Beverage's bookkeeper, he was the only individual who had the authority to sign checks for Food & Beverage. He stated that he had the authority to make and authorize bank deposits and to authorize payroll checks. It was his responsibility to identify and calculate the amount that should have been withheld for federal payroll taxes and to prepare Food & Beverage's payroll tax returns. He was also the individual who had the authority to authorize payment of federal tax deposits. Based on this evidence, the Court must conclude that Early exercised a "sufficient degree of influence and control over the financial affairs" of Food & Beverage to be considered a "responsible person" under § 6672(a). See Harold v. United States, 195 Fed. Appx. 358, 364 (6th Cir. 2006).

The next factor the Court must consider is whether Early "willfully" failed to pay the taxes. With regard to willfulness, the Sixth Circuit has explained that "[a] responsible person who makes a deliberate choice to voluntarily, consciously, and intentionally pay other creditors rather than make

8

tax payments is liable for willful failure." Bell, 355 F.3d at 393 (quoting Collins v. United States, 848 F.2d 740, 742 (6th Cir. 1988)). Indeed, a responsible person "need not exhibit an intent to defraud the IRS or some other evil motive; all that is necessary to demonstrate willfulness if the existence of an intentional act to pay other creditors before the federal government." Id. Thus, in Collins, the court held that even though the plaintiff was "a sympathetic figure," he still acted willfully "because he knew that the taxes were not being paid and he diverted funds, which could have been used to offset the tax debt, to cover other business expenses." Id.(citing Collins, 848 F.2d at 742)).

Here, as in Bell and Collins, it is clear that Early knew about the delinquent taxes and voluntarily paid other creditors before paying the federal government. In his deposition, Early admitted that he knew of Food & Beverage's tax delinquency, but felt that he had to prioritize his disbursement of Food & Beverage's limited funds by first making payroll and then paying the company's most pressing creditors/suppliers. Early's testimony that he told others that he did not have the money to pay Food & Beverage's payroll taxes, but was never given the funds to cover the taxes, makes his conduct no less willful. See also Collins, 848 F.2d at 741-742 ("It is no excuse that, as a matter of sound business judgment the money was paid to suppliers and for wages in order to keep the corporation operating as a going concern – the government cannot be an unwilling partner in a floundering business.")

For these reasons, the Court holds that the United States is entitled to judgment as a matter of law on its claim against Early.

## IV. CONCLUSION

For the following reasons, the United States' motion for partial summary judgment against

Third-Party Defendant Taylor is **GRANTED;** Taylor's motion for summary judgment against the United States is **DENIED**; and the United States motion for partial summary judgment against Third-Party Defendant Thomas Early is **GRANTED**.  **IT IS SO ORDERED**.

Joseph H. McKinley, Jr., Judge
United States District Court

June 18, 2008

cc: Counsel of Record